# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Jeff Circle<br>19496 W. River Rd.<br>Bowling Green, Ohio 43402 | )<br><br>) | Case No.: _____<br><br>Judge: _____ |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT WITH JURY**<br>**DEMAND ENDORSED HEREON** |
| | ) | |
| Walsingham Group, Inc.<br>6390 Ramsey St.<br>Fayetteville, NC 28311 | )<br>)<br>) | Roman Arce (0059887)<br>**MARSHALL & MELHORN, LLC**<br>Four SeaGate, Eighth Floor<br>Toledo, Ohio 43604 |
| c/o CT Corporation System<br>Registered Agent<br>160 Mine Lake Court, Suite 200<br>Raleigh, NC  27615-6417 | )<br>)<br>) | Telephone:     419-249-7100<br>Facsimile:     419-249-7151<br>arce@marshall-melhorn.com |
| Defendant. | )<br>) | Attorneys for Plaintiff |

Plaintiff, Jeff Circle, by and through his attorneys at Marshall & Melhorn, LLC, hereby states for his Complaint against Defendant, Walsingham Group, Inc., the following:

### PARTIES

1. Plaintiff is a resident in the City of Bowling Green, Wood County, Ohio.

2. Upon information and belief, Defendant is for-profit corporation incorporated under the laws of North Carolina.

**JURISDICTION AND VENUE**

3.      This suit asserts claims under the anti-retaliation provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) and asserts an Ohio law claim for wrongful discharge in violation of public policy.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this claim arises out of the laws of the United States, i.e., the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). This Court also has diversity jurisdiction over this action because Plaintiff is domiciled in Ohio, and Defendant is domiciled in North Carolina.

5.      This Court has subject matter jurisdiction over Plaintiff's Ohio law claim because 28 U.S.C. § 1367(a) provides that this Court has supplemental jurisdiction over all state law claims that are so related to Plaintiff's federal law claims, that they form part of the same case or controversy under Article III of the U.S. Constitution.

6.      Venue is established and proper pursuant to 28 U.S.C. § 1391 because: (a) at all relevant times, Defendant employed Plaintiff while Plaintiff worked from his primary residence located in Wood County, Ohio, and (b) Defendant terminated Plaintiff's employment for unlawful reasons in Wood County, Ohio.

**OPERATIVE FACTS**

7.      Defendant hired Plaintiff in November 2013, Defendant promoted Plaintiff to the position of Senior Program Manager in July 2019, and Defendant terminated Plaintiff's employment for unlawful reasons effective September 30, 2021.  From July 2019 to September 2021, Plaintiff worked for Defendant remotely from Plaintiff's home in Bowling Green, Ohio.

8.      At all relevant times, Defendant was a subcontractor to NDSL Group, Ltd., a prime federal contractor.

9.      Pursuant to its subcontract with NDSL Group, Defendant employed Afghan nationals to perform work in Afghanistan.  Defendant submitted claims for payment to NDSL; in so doing, Defendant certified that it paid all required wages and all applicable Afghan payroll taxes on behalf of all Afghan nationals who worked on Defendant's payroll.  Based on Defendant's submissions to NDSL, the federal government paid NDSL, and NDSL in turn paid Defendant, the dollar amount needed to cover all wages and payroll taxes due for all Afghan nationals employed by Defendant.

10.     However, despite signing certifications to the contrary, Defendant knowingly failed and refused to pay any of the payroll taxes due to the Afghan government.

11.     On multiple occasions, Plaintiff informed both Defendant's Chief Executive Officer and sole owner, Edward Petkovich, and Defendant's Vice President of Global Security, Kelly George, that Defendant was defrauding the federal government by accepting payment in full from NDSL, including money designated and intended to cover the cost of Afghan payroll taxes, but not paying any of the Afghan payroll taxes. Defendant failed and refused to pay the Afghan payroll taxes, which remain due and payable at the present time.

12.     Over a period of two years, Plaintiff continued his on-going efforts to convince Defendant to pay the Afghan payroll taxes, but Defendant repeatedly refused to do so.

13.     Not long after Plaintiff's most recent attempt to convince Defendant to pay the Afghan payroll taxes, Defendant terminated Plaintiff's employment effective September 30, 2021.  At that time, Defendant informed Plaintiff in writing that it terminated Plaintiff's

3

employment because:  "Your existing work has been terminated by the federal Government, and we are left with no programs that suit your skillset that you can successfully run at WGI."

14.     The very next day after Plaintiff's date of termination (Sept. 30, 2021), Defendant hired an individual to replace Plaintiff, and that individual is currently working on at least one contract that Plaintiff successfully managed during his employment with Defendant.

15.     In reality, Defendant terminated Plaintiff's employment in retaliation for Plaintiff's long-standing opposition to Defendant's submission of false claims to the U.S. government, i.e., fraudulent claims.

16.     Defendant's stated reason for terminating Plaintiff's employment, i.e., "Your existing work has been terminated by the federal Government," is a pretext for unlawful retaliation against Plaintiff in violation of the False Claims Act.

17.     At the time Defendant terminated Plaintiff's employment based on unlawful retaliatory motive, Plaintiff received an annual salary of $100,000.

## COUNT I – RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

18.     Plaintiff hereby incorporates each and every one of the foregoing allegations, as if fully rewritten herein.

19.     The False Claims Act ("FCA") includes the following anti-retaliation provision:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor or agent, or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of [the False Claims Act].

31 U.S.C. § 3730(h)

4

20.     Plaintiff's "efforts to stop 1 or more violations of the FCA" constitute "protected activity" under the FCA's above-quoted anti-retaliation provision, 31 U.S.C. § 3730(h).

21.     Defendant knew Plaintiff engaged in "protected activity" under the FCA; Defendant knew this before it terminated Plaintiff's employment in retaliation for his "protected activity," i.e., his efforts to stop 1 or more violations of the FCA.

22.     Plaintiff incurred damages as a result of Defendant's unlawful retaliation against Plaintiff for his efforts to stop 1 or more violations of the FCA.

23.     Defendant is liable to Plaintiff for unlawful retaliation based on Plaintiff's "protected activity" under the FCA, and Plaintiff is entitled to recover damages and appropriate injunctive relief.

## COUNT II – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

24.     Plaintiff hereby incorporates by reference the allegations set forth above, as if fully rewritten herein.

25.      A clear public policy exists and is manifested in the False Claims Act, i.e., a clear public policy to both encourage employees, like Plaintiff, to engage in efforts to stop or prevent violations of the FCA, and to discourage and hold accountable employers who retaliate against employees who engage in efforts to stop or prevent violations of the FCA.

26.     Terminating Plaintiff's employment in retaliation for his efforts to stop or prevent violations of the FCA would jeopardize the clear public policy at issue in this case.

27.     Plaintiff's dismissal was motivated by conduct related to the public policy, i.e., Plaintiff's efforts to convince Defendant to pay the Afghan payroll taxes due.

28.     Defendant lacks an overriding legitimate business justification for terminating Plaintiff's employment effective September 30, 2021.

29.     Plaintiff incurred damages as a result of Defendant's unlawful retaliation against Plaintiff for his "efforts to stop 1 or more violations of the FCA."

30.     Under Ohio law, Defendant is liable to Plaintiff for wrongful discharge in violation of public policy, and Plaintiff is entitled to recover damages and appropriate injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.     That this Court award appropriate equitable relief to make Plaintiff whole for his losses, including reinstatement to his former position of employment and monetary damages in an amount exceeding $25,000;

B.     That this Court award Plaintiff back pay from the date Defendant terminated Plaintiff's employment due to unlawful retaliation and in violation of public policy;

C.     That this Court award Plaintiff front pay;

D.     That this Court order Defendant to compensate Plaintiff for all of the benefits, including, but not limited to, group health insurance coverage,  he would have earned or received had Defendant not terminated Plaintiff's employment due to unlawful retaliation and in violation of public policy;

E.     That this Court order Defendant to compensate Plaintiff for all costs and reasonable attorneys' fees Plaintiff incurred in this case;

F.     That this Court order Defendant to reimburse Plaintiff for all of Plaintiff's out of pocket medical expenses that would have been covered by Defendant's group health insurance

coverage, but for Defendant's decision to terminate Plaintiff's employment in retaliation for Plaintiff's efforts to stop and to prevent FCA violations;

G.      That this Court award Plaintiff (1) pre and post judgment interest on all recoverable damages, (2) an upward adjustment to compensate for the loss of real purchasing power due to inflation between the dates of loss and award, and (3) an upward adjustment to compensate for any income tax obligations imposed upon Plaintiff by law with respect to any recovery of front pay, back pay, or attorneys' fees in this case; and

H.      That this Court award Plaintiff compensatory and punitive damages in an amount exceeding $25,000, including recovery of Plaintiff's reasonable costs and attorneys' fees.

Respectfully submitted,

/s/ Roman Arce
Roman Arce (0059887)

Attorney for Plaintiff, Jeff Circle

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Roman Arce
Roman Arce (0059887)

Attorney for Plaintiff, Jeff Circle

7